IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

```
                              )
UNITED STATES OF AMERICA      )
                              )
      Plaintiff,              )
                              )
                              )
          v.                  )     1:09cr214 (JCC)
                              )
                              )
JORGE PATLAN,                 )
                              )
      Defendant.              )
```

**M E M O R A N D U M   O P I N I O N**

_____This matter is before the Court on the motion to dismiss by Defendant Jorge Patlan (Defendant).  For the following reasons, the Court will deny the motion.

**I.  Background**

On February 17, 2009, Defendant was arrested for being drunk in public in Manassas, Virginia.  Following his arrest, he was interviewed by a law enforcement officer with the authority to enforce immigration laws pursuant to 8 U.S.C. § 1357(g), Defendant admitted that he was a citizen of Mexico, that he had been previously deported, and that he had illegally re-entered the United States.  On February 19, 2009, Defendant was released from state custody and transferred to the custody of Immigration and Customs Enforcement (ICE).  He was held in administrative detention while ICE processed his administrative deportation.

1

ICE Agent Patrick Divver (Agent Divver) began work on Defendant's case on March 29, 2009.  By March 31, 2009, Agent Divver had analyzed Defendant's fingerprints and matched them to his alien registration file, which contained a record of his prior deportation and a final order of removal.  In other words, separate and apart from Defendant's confession, ICE confirmed, on March 31, 2009, that Defendant had re-entered the United States following his previous deportation.

Agent Divver referred the case to the United States Attorney's Office (USAO) on April 1, 2009.  On April 8, 2009, Agent Divver signed an affidavit and criminal complaint before United States Magistrate Judge Jones, who issued an arrest warrant on that date.  The arrest warrant was served on Defendant the next day.  On May 7, 2009,a grand jury sitting in the Eastern District of Virginia issued a one-count indictment charging Defendant with illegal reentry in violation of 8 U.S.C. 1326(a).  Defendant moved to dismiss the indictment for violation of the Speedy Trial Act on June 1, 2009.  The Government opposed his motion on June 9, 2009.  Defendant's motion is currently before the Court.

## II. Analysis

The Speedy Trial Act (Act), 18 U.S.C. § 3161(b), provides:

> Any information or indictment charging an individual with the commission of an offense shall

2

be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges.

A related section defines "offense" as "any Federal criminal offense which is in violation of any Act of Congress and is triable by any court established by Act of Congress." *Id.* at § 3172(2). Thus, the plain language of the Act provides that its protections are triggered on the date that the individual is "arrested" in connection with the "federal criminal offense" for which he is later indicted. *Rodriguez-Amaya*, 521 F.3d at 441. Despite the apparent clarity of this proposition, a question can arise about the date the Act is triggered if a defendant has been detained prior to the relevant arrest.

Addressing such a situation in *United States v. Woolfolk*, 399 F.3d 590, 596 (4th Cir. 2005), the Fourth Circuit found that "the provisions of the Speedy Trial Act can be triggered by something other than actual federal custody and federal arrest." Specifically, it held that an individual's detention by a state triggered the Act "after state proceedings against [the defendant] terminated" and "when the Government knew or should have known that the defendant was restrained solely to answer federal charges." *Id.*

The Fourth Circuit has also addressed triggering the Act specifically with respect to ICE custody. In *United States v. Rodriguez-Amaya*, it found, "in agreement with every other

circuit to have considered the issue, that the Speedy Trial Act does not apply to civil detention generally, [or] to ICE administrative detention specifically." 521 F.3d 437, 442 (4th Cir. 2008) (citations omitted). It went on, however, to explicitly recognize the so-called "ruse exception" to the general rule that the Act does not apply to ICE administrative detention. *Id.* at 442. This exception is intended to cover situations "when the primary or exclusive purpose of the civil detention was to hold a defendant for future criminal prosecution." *Id.* at 442 (internal quotation, citation, and alteration omitted). It is based on the premise that "[t]he requirements of the Act would lose all meaning if federal criminal authorities could collude with civil or state officials to have those authorities detain a defendant pending federal criminal charges solely for the purpose of bypassing the requirements of the Speedy Trial Act." *Id.* at 441-42. Defendant bears the burden of proving that the exception applies, *id.* (citations omitted), and that the Act was triggered prior to his "arrest" on the relevant "federal criminal offense," 18 U.S.C. § 3172(2).

A.   Parties' Proposed Triggers

Defendant argues that the Act's protections were triggered when Agent Divver assembled the evidence that Defendant had reentered the United States after deportation - i.e., that he

4

had committed a criminal offense.  Def.'s Mot. to Dismiss 3.
After that day, Defendant submits, he was no longer held by ICE
for administrative deportation, but was "arrested" in connection
with a criminal prosecution.  Def.'s Mot. to Dismiss 3.  The
purportedly triggering event occurred on April 1, 2009; the grand
jury did not indict defendant on the criminal charge until May 9,
2009, thirty-six days later.  Accordingly, Defendant submits, the
indictment violates § 3161(b) because it did not issue within
thirty days.

The Government contends that Defendant's arrest
pursuant to an arrest warrant issued by the magistrate judge
triggered the Act.  Defendant was detained pursuant to that
warrant on April 9, 2009.  Therefore, according to the
Government, § 3161(b) required the grand jury to indict Defendant
by May 9, 2009, thirty days later.  The indictment in this matter
issued on May 7, 2009, two days prior to the Government's
proposed deadline.

In arguing for the April 1, 2009 trigger date,
Defendant fails to explicitly mention the ruse exception or to
allege that any collusion between ICE and the USAO occurred.  He
also does not argue that either ICE or the Government acted with
an intent to avoid the Speedy Trial Act's requirements.  Instead,
he submits only that the Act was triggered because the "primary
or exclusive purpose," *Rodriguez- Amaya*, 521 F.3d at 442

(citation omitted), of Defendant's detention as of the date that Agent Divver "initially started the paperwork to present to the U.S. Attorney," Prelim. Hr'g Tr. 11 (cross-examination of Agent Divver), "'was to hold [Defendant] for future criminal prosecution,'" *Rodriguez-Amaya*, 521 F.3d at 442 (*citation omitted*).

### B.   The Ruse Exception Does Not Apply

The Court finds that Defendant has not met his burden to show that the ruse exception applies because ICE administratively detained him after April 1, 2009 either "primar[ily] or exclusive[ly]" for federal criminal prosecution. *Rodriguez-Amaya*, 521 F.3d at 439.   Defendant's argument fails because it asks the Court to infer, solely from the fact that an ICE agent had assembled Defendant's alien file and fingerprints and concluded that Defendant had reentered after deportation, that criminal prosecution was the sole purpose of Defendant's continuing detention.   This assumption is unsupported by the evidence presented.

First, on Defendant's proposed trigger date, April 1, 2009, he was still eligible for administrative deportation, which required additional processing.   The Court bases this finding based on the testimony given by Agent Divver at the hearing on this motion to dismiss the indictment.   *See* Mot. Hr'g Tr. (direct examination of Agent Divver).   The Court finds that Agent Divver

6

is a credible witness.  Defendant failed to contradict this
testimony with evidence showing that work on Defendant's
administrative deportation ceased on March 31, 2009.[1]  Patlan's
situation is similar to that presented in *Rodriguez-Amaya*, in
which the Fourth Circuit refused to apply the ruse exception.
521 F.3d at 442 (noting that ICE had more administrative work to
complete before the defendant could have been administratively
removed).

Second, there are no allegations that ICE delayed
pursuing the criminal prosecution of Defendant, discovering facts
relevant to the charge against him, obtaining an arrest warrant,
effecting Defendant's arrest pursuant to that warrant, or
colluding with the Government in this matter.  *See*
*Rodriguez-Amaya*, 521 F.3d at 442 (noting that ICE immediately
turned the defendant over for his criminal arrest when it became
aware of the criminal arrest warrant).  In *Rodriguez-Amaya*, the
Fourth Circuit found it "pellucidly clear that" the ruse
exception did not apply, despite a two-month delay between
Rodriguez-Amaya's initial civil detention and the issuance of a
criminal arrest warrant *and* another delay of twenty days before
the criminal arrest warrant was served, because Rodriguez-Amaya

---

[1] Agent Divver could not testify regarding this point because he was
only involved in the possible criminal prosecution of Defendant.  Mot. Hr'g
Tr. (direct examination of Agent Divver).

did not show collusion or that his detention did not have an administrative purpose.

Further, as of April 1, 2009, Agent Divver had not yet filed a criminal complaint against Defendant or obtained a warrant for Defendant's arrest on the criminal charges. *See* Prelim. Hr'g Tr. 11 (cross-examination of Agent Divver). The majority of the cases that Defendant cites to support his position do not address a situation in which a defendant argues that his Speedy Trial Act protections were triggered *before* a criminal complaint and arrest warrant were issued. *See Rodriguez-Amaya*, 521 F.3d at 439; *Woolfolk*, 399 F.3d 590; *United States v. Bravo*, 2004 WL 1535787, at *2 (E.D. Pa. June 21, 2004); *United States v. Okuda*, 675 F. Supp. 1552, 1554-55 (D. Haw. 1987).

Of the two cases noted by Defendant that *do* involve a similar situation, in *United States v. Vasquez-Escobar*, 30 F. Supp. 2d 1364, 1367 (M.D. Fla. 1998), the then-INS admitted to administratively detaining the defendant "specifically to provide the government the time and evidence necessary to establish [the defendant's] 'guilt beyond a reasonable doubt' [on] the [] criminal charge." As noted above, there are no allegations or evidence of collusion in this case. *See, e.g.*, Mot. Hr'g Tr. (direct examination of Agent Divver). In *United States v. De La Pena-Juarez*, the Fifth Circuit adopted the ruse exception, but

8

found that it did not apply because the defendant had not shown
that the then-INS had civilly detained him "solely based upon
[the criminal charge],'" despite a four-month delay between ICE's
discovery of the alleged criminal infraction and a six-week delay
between the USAO's receipt of the relevant information and the
defendant's indictment.  214 F.3d 594, 599 (5th Cir. 2000).  As
discussed above, Defendant has not adduced any evidence to show
that he was not also detained for administrative deportation
until April 9, 2009, when he was transferred out of ICE custody.

Finally, although Defendant relies on *United States v.
Woolfolk*, 399 F.3d 590, 596 (4th Cir. 2005), in his reply brief,
he fails to address how either part of the Fourth Circuit's
reasoning applies to this case.  *Woolfolk* held that an
individual's detention by a state triggered the Speedy Trial Act
"after state proceedings against [the defendant] terminated" and
"when the Government knew or should have known that the defendant
was restrained solely to answer federal charges."  *Id.*  Defendant
has not shown that ICE had terminated its administrative process,
or that either ICE or the USAO intended to continue Defendant's
detention after March 31, 2009 based solely on the potential, but
as-yet unfiled, criminal charges against him.

C.   Remedy for Violation of Speedy Trial Act

Defendant requests that, if the Court finds that the
Speedy Trial Act was violated, it dismiss the indictment with

9

prejudice.  The Court finds that it is unnecessary to address a remedy because it has found no violation of the Speedy Trial Act.

### III.  Conclusion

For these reasons, the Court will deny Defendant's Motion to Dismiss Indictment for Violation of the Speedy Trial Act.

An appropriate Order will issue.

June 22, 2009                    _____/s/_____
Alexandria, Virginia                     James C. Cacheris
                              UNITED STATES DISTRICT COURT JUDGE